[Civ. No. 51538. Second Dist., Div. Five. May 23, 1978.]

In re LISA D. et al., Persons Coming Under the
Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF SOCIAL SERVICES,
Plaintiff and Respondent, v.
JUANITA C., Defendant and Appellant;
FRANK D., Real Party in Interest and Respondent.

## COUNSEL

Benson Schaffer, under appointment by the Court of Appeal, for Defendant and Appellant.

John H. Larson, County Counsel, and Carlos H. Fernandez, Deputy County Counsel, for Plaintiff and Respondent.

Hornwood & Aronoff and Steven H. Hornwood for Real Party in Interest and Respondent.

## OPINION

**KAUS, P. J.**—In two petitions filed by the Los Angeles County Department of Public Social Services (DPSS), it was alleged that Lisa D., age 12, and Frankie D., age 8, were dependent children within the meaning of Welfare and Institutions Code section 600, subdivisions (a) and (d).[1] Juanita C. (Juanita), the mother, appeals from the order declaring the children to be dependent children of the court.

### FACTS

Viewing the record in the light most favorable to the order of the juvenile court, (*In re Luwanna S.* (1973) 31 Cal.App.3d 112, 114 [107 Cal.Rptr. 62]) the following facts were adduced at the adjudication hearing:

During 1975, Lisa and Frankie lived in Bell, California, with Juanita and her boyfriend, Jaime Cumplido. The children slept in the living

---

[1]Now subdivisions (a) and (d) of section 300. (Stats. 1976, ch. 1068.) All references will be to the present *Welfare and Institutions Code* unless otherwise specified. As relevant, the section provides:

"Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court:

"(a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising such care or control, or has no parent or guardian actually exercising such care or control.

"(d) Whose home is an unfit place for him by reason of neglect, cruelty, depravity, or physical abuse of either of his parents, or of his guardian or other person in whose custody or care he is."

room. Almost every morning Cumplido would enter and touch Lisa's crotch and breasts under her pajamas. On one occasion, Cumplido placed his penis "in the back of [her] butt" and a "watery and gooey" liquid was expelled.

Cumplido told Lisa to keep these activities a secret, but Lisa told her mother about the molestations. Juanita and the children left Cumplido, but later returned. For four or five months the children slept in the same bed with their mother and Cumplido, during which time Cumplido made Lisa sleep next to him. He habitually placed his penis in her anal area. Lisa complained to her mother daily. Juanita threatened to hit Lisa if she said anything to anyone else.[2]

One afternoon, Frankie saw Cumplido touching Lisa's breasts. As soon as Cumplido saw Frankie, he took his hand away. Lisa complained to Frankie that Cumplido did "nasty" things to her, but she was not more explicit.

Juanita denied that Lisa had ever told her about the molestations. She believed that Lisa was lying. She loved her boyfriend but was equivocal about whether she would continue to live with him.

Cumplido, who was called as a witness both by Juanita and by DPSS, asserted his privilege against self-incrimination with respect to all crucial questions.

Dora Cadena, Juanita's sister-in-law, testified that at one point Juanita had said that she was leaving Cumplido because he was mistreating the children. He had hit the children once or twice and they were afraid of him. He was mean and strict with them.

The juvenile court sustained the petitions and temporarily awarded custody of the children to their father, Juanita's estranged husband, who had participated in the proceedings. On appeal Juanita chiefly asserts that the evidence was insufficient to support the orders declaring Frankie and Lisa to be dependent children.

## DISCUSSION

Although Juanita's sole point on appeal is insufficiency of the evidence to sustain either petition, implicit in her submission is the contention that

---

[2]The record does not indicate how these events came to the attention of DPSS.

the trial court invoked the wrong standard of proof. Thus she argues that "under the holding of *In the Matter of Robert P.,* 61 Cal.App.3d 310 it would appear that in cases where the awesome power of the state is being invoked to interfere in the parent-child relationship, the preponderance test is unconstitutional and the appropriate test is clear and convincing." She then points out, correctly, that in this case the court announced: "I believe the petitions are true, and I'm using a preponderance of the evidence theory because I believe that is the theory at law as it now stands."

The discussion of *In re Robert P.* (1976) 61 Cal.App.3d 310, 317-319 [132 Cal.Rptr. 5], sets up a strawman. There the court was concerned with the standard of proof necessary to support an award of custody to a nonparent against the claim of a parent which, under the holding in *In re B. G.* (1974) 11 Cal.3d 679 [114 Cal.Rptr. 444, 523 P.2d 244], could be done only upon a clear showing that such an award was essential to avert harm to the child. ■ Here, the trial court was simply talking about the standard of proof necessary to support the factual allegations of dependency under section 300 of the Welfare and Institutions Code which, under section 355 of the same code is "proof by a preponderance of evidence, legally admissible in the trial of civil cases . . ." Indeed, it would be a barbaric system which decreed a more stringent standard with respect to the simple finding of dependency. Is a court to do nothing if a preponderance of the evidence convinces it that a child is living in "an unfit place . . . by reason of neglect, cruelty, depravity, or physical abuse . . . ?" Questions concerning a more stringent standard do not arise until a finding of dependency results in a disposition which severs the parent-child relationship either temporarily or permanently.

Here, of course, no such question ever arose. The children were merely temporarily removed from the home of the mother to that of the father.[3]

Having determined that the proper standard of proof was applied below, we turn to the question of sufficiency of the evidence to support the dependency orders. ■ The evidence shows that over a period of several months 12-year-old Lisa was sexually molested on an almost daily basis by her mother's boyfriend. Lisa's mother was aware of the

---

[3]The court's precise order reads as follows: "The children are declared dependent children of this court under Section 300 A&D of the Welfare and Institutions Code of the State of California. Their legal care, custody and control are removed from both of their natural parents and are placed under the jurisdiction of this Court. I find that it would be detrimental to return the children to the home of the mother at this time, and, therefore, they're ordered home on probation in the home of the father."

molestations but refused to do anything to rectify the situation. Indeed, she forbade Lisa to tell anyone about them. Certainly the evidence supports the order as to Lisa. (See *In re Van Vlack* (1947) 81 Cal.App.2d 838, 841-842 [185 P.2d 346].)

■ Substantial evidence also supports the order declaring Frankie a dependent child. Frankie was a witness to the molestation of Lisa on one occasion, an event obviously conducive to psychological trauma to the eight-year-old boy. (Cf. *In re Biggs* (1971) 17 Cal.App.3d 337, 342 [94 Cal.Rptr. 519].) More important, it was certainly inferable from Juanita's consistent failure to take steps to alleviate the problem that she was not capable of exercising proper parental control with respect to either child. (See *In re Jeannie Q.* (1973) 32 Cal.App.3d 288, 304 [107 Cal.Rptr. 646].) Finally, there was evidence that Cumplido had mistreated both children.

The orders declaring Lisa and Frankie dependent children of the juvenile court are affirmed.

Stephens, J., and Hastings, J., concurred.